BOARD OF EDUCATION OF McDOWELL COUNTY, AND R. W. GOODMAN, CHAIRMAN, C. A. MORRIS, M. R. NANNEY, J. W. McCALL, F. C. DAVES, COMPRISING AND BEING THE SCHOOL DISTRICT COMMITTEE FOR THE GLENWOOD-DYSARTVILLE HIGH SCHOOL DISTRICT, THE LATTER FIVE PERSONS BEING TAXPAYERS AND CITIZENS IN GLENWOOD-DYSARTVILLE HIGH SCHOOL DISTRICT, v. MRS. MARY G. BURGIN, COUNTY ACCOUNTANT FOR THE COUNTY OF McDOWELL.

(Filed 2 May, 1934.)

1. **Schools and School Districts C b—Held: new administrative unit had authority to expend ;fund on hand for purpose for which it was created.**

   A local-tax school district voted to levy a special tax to furnish funds to supplement the six months school term in the district. The district was abolished pursuant to chap. 562, Public Laws of 1933, and a new district comprising the same territory was established by the board of education and State School Commission as an administrative unit in the State-wide system of public schools. At the time of the abolition of the old district and the creation of the new, there was an unexpended sum in the fund created by the tax to supplement the school term: *Held*, the new district, as successor to the old, has authority to expend the fund for the purpose .of supplementing the six-months school term of the district, that being the purpose for which the tax providing the fund was levied, and this result is not affected by the provisions of chap. 562, sec. 4, which requires certain funds to be placed in the debt service fund, section 4 applying only to funds collected from designated sources subsequent to the effective date of the statute, and not to funds on hand at the time of the creation of the new district.

2. **Same—Objection that funds were not properly budgeted and appropriated to supplement school term, held untenable in this case.**

   In a suit to compel a county accountant to sign vouchers for the distribution of certain funds it was alleged that the funds in question came into possession of plaintiff school administrative unit as successor to a local-tax district, and that the funds represented a sum saved by economy out of funds appropriated and budgeted by the former district to supplement the six-months term of school and raised by a special tax voted for this purpose, and that plaintiff was attempting to expend the funds to supplement the six-months term of school for the following year. The county accountant filed a demurrer on the ground that the funds had not been properly budgeted and appropriated: *Held*, the demurrer admitted that the funds had been properly budgeted and appropriated to supplement the six-months school term, for which purpose plaintiff sought to expend them, and the budget is designed as a tentative basis for determining the tax levy necessary to operate the schools and the disposition of the funds involved no question of taxation.

3. **Mandamus A b—**

   Mandamus will lie to compel a county accountant to sign vouchers which he is required to sign by law, since under such circumstances the signing of the vouchers is a purely ministerial duty.

CIVIL ACTION, before *Schenck, J.,* at December Term, 1933, of Mc-
DOWELL.

The story told by the complaint is substantially as follows:

1. In 1904 there was created according to law in McDowell County,
Glenwood High School District, same being a local tax district, and was
established by the holding of an election in the district by the taxpayers
thereof, who voted upon themselves a tax rate not to exceed thirty
cents on the $100 valuation "for the purpose of supplementing the
six months school term funds in that district." At various times the
district was duly enlarged in the manner prescribed by law and by a
vote of the taxpayers accepting the tax theretofore levied in Glenwood
High School District for said purposes of supplementing the six months
school term fund. Thereafter in June, 1933, pursuant to chapter 562
of the Public Laws of 1933 all existing school districts in McDowell
County were abolished and the board of education and the State School
Commission for purposes of administration and levying taxes, redis-
tricted the county, creating a new district known as Glenwood-Dysart-
ville High School District, which said district comprises the identical
territory and patrons therein formerly comprising the Glenwood High
School District.

2. The Glenwood High School District by virtue of the levy of taxes
from year to year from 1929 to 1933, had by the exercise of thrift and
strict economy so managed the financial affairs of the district that there
had been a saving of $3,160.20, which said money is now to the credit
of the Glenwood-Dysartville High School District "as a balance to said
district as successor to the Glenwood High School District."

3. That the Glenwood High School District prepared each year a
budget setting forth items of expenditure of funds so raised supple-
menting the six months school term funds "submitting the same each
year to the county board of education of McDowell County for approval,
which board in turn submitted the same to the board of county commis-
sioners for McDowell County for approval," and that following the ap-
proval of said budget by both the board of education and the board of
commissioners taxes had been duly levied in said local tax district suffi-
cient to meet the school needs of the district.

4. The Glenwood-Dysartville High School District committee in
November, 1933, adopted a budget involving the expenditure for pur-
poses of supplementing the needs of the six months school term, includ-
ing the said balance then due the Glenwood-Dysartville High School
District. The budget was approved by the county board of education,
and thereupon said committee "incurred certain indebtedness by virtue
of the purchase of sundry and various items for school purposes, and
further by virtue of certain labor and work done on school property

and for school purposes, all of which indebtedness was lawfully incurred in accordance with the budget for expenditure of supplementary school funds as set out above. That in order to pay such indebtedness certain vouchers in proper form were issued by the county superintendent of McDowell County, signed by the chairman of the county board of education and drawn on the balance due the Glenwood-Dysartville High School District.

5. These vouchers were duly presented to the defendant, Mary G. Burgin, county accountant for McDowell County, for her inspection and signature as required by law. Thereupon, "the said Mary G. Burgin, acting in her capacity as county accountant, failed, neglected and refused to sign said vouchers, without good cause therefor, and as required by law. That the plaintiff, Glenwood-Dysartville High School District committee, has no fund other than these which can be used to defray school expenses incurred in supplementing the six months school term." Upon the refusal of the county accountant to sign the checks or vouchers, this suit was instituted by the county board of education and the school committee of Glenwood-Dysartville High School District against said county accountant.

The defendant, county accountant, demurred to the complaint for that (a) the funds on which the vouchers were drawn, was an accumulation of taxes levied in the Glenwood High School District which had. been abolished by chapter 562, Public Laws of 1933, and that the plaintiffs, school committee of the new district, have no jurisdiction of the fund; (b) the fund had not been budgeted as required by law; (c) no appropriation order had been made; (d) the attempted budget had not been approved by the board of county commissioners of McDowell County.

The plaintiffs prayed for a writ of mandamus, requiring the defendant, county accountant, to sign the vouchers referred to in the complaint.

After hearing the argument of the cause the trial judge was of the opinion that the demurrer should be sustained, and so ruled. Whereupon the plaintiffs appealed.

*Carter Hudgins and P. J. Story for plaintiffs.*
*W. T. Morgan and Winborne & Proctor for defendant.*

BROGDEN, J. Does the school committee of Glenwood-Dysartville High School District, as successor of the Glenwood High School District, have the right to expend the fund produced by taxes heretofore duly levied in said district and now in hand to its credit, for the purpose of supplementing the six months school term in said district?

Glenwood High School District by a vote of the taxpayers therein, levied a tax upon all property within the district for the purpose of

supplementing the six months school term. By economy and wise management an unexpended balance of $3,060.20 had been accumulated. By virtue of chapter 562, Public Laws of 1933, the district was abolished and a new district known as Glenwood-Dysartville High School District set up in its stead, covering, however, the identical territory theretofore comprising the Glenwood District.

The initial inquiries, therefore, are: to whom does this money belong and who has the power to spend it, and for what purpose?

The fund was raised by taxation in a particular governmental subdivision, to wit, Glenwood High School District. The tax producing the fund was levied by virtue of a vote of the people in the said particular district and for the express purpose of supplementing the six months school term therein. Consequently, nothing else appearing the conclusion would be inevitable, that when the district was abolished, the money should return to the taxpayers or be used for the school needs of the district through the instrumentality of its successor, the Glenwood-Dysartville High School District.

The defendant, however, asserts that chapter 562, section 4, of the Public Laws of 1933, directs the application of the money. The language relied upon is substantially as follows: "All uncollected taxes which have been levied in the respective school districts of the State .. . . upon collection shall be made a part of the debt service fund of the special bond tax unit along with such other funds as may accrue to the credit of said unit; and in the event there is no debt service requirement upon such district, the amount so collected shall be covered into the county treasury to be used as a part of the county debt service for schools," etc.

It does not appear that Glenwood School District had any outstanding bonds. Manifestly, the expressions "uncollected taxes" and "such other funds as may accrue" refer to funds becoming available in the future, and hence do not operate upon the money specified in the complaint. Therefore, even if it be granted that the Legislature had the power to take this money and spend it for the benefit of other governmental subdivisions, it has not sought to do so, and hence so far as the law is concerned, the money is still in the treasury to the credit of the school district, and available for the very purposes for which the taxpayers provided it.

It is further asserted that the fund has not been properly budgeted and appropriated. It would seem that this contention is water that has passed over the dam, because it is alleged and admitted by demurrer that this money has been budgeted each year and that appropriations have been duly made during the existence of the Glenwood High School District. Moreover, the budget is designed as a tentative basis for de-

termining the tax levy necessary to operate the school. The disposition of the particular sum of money would in this case invoke no taxing power.

While the county auditor perhaps acted wisely in proceeding cautiously because of changes in the law, no sound reason occurs to the court why she should not sign the voucher or vouchers specified in the complaint, to the end that the money shall be used for the purpose for which it was accumulated. Indeed, it was alleged in the complaint and admitted by demurrer that the defendant "refused to sign said vouchers without good cause therefor and as required by law." The signing of the vouchers upon the facts disclosed in the pleadings, does not involve the exercise of discretion, but would seem to fall within the category of purely ministerial acts.

Reversed.